DECISION AND JUDGMENT
{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas which, on February 13, 2008, denied appellant's post-sentence motion to withdraw his plea of no contest. For the reasons that follow, we affirm the decision of the trial court. *Page 2 
 {¶ 2} On July 20, 2001, following a plea of no contest to murder, in violation of R.C. 2903.02(A), an unclassified felony, appellant was found guilty and, after waiving his right to a pre-sentence report, was immediately sentenced to serve a term of incarceration of 15 years to life. On October 11, 2007, appellant filed a pro se motion to withdraw his plea of no contest, along with an affidavit of indigency. In his motion, appellant argued that psychiatric medications he was taking at the time of the plea "increased some of his symptoms causing him much more irritability, confusion, difficulties concentrating and making decisions." Appellant asserted that he was no longer taking the prescribed medications and, as such, had enhanced his ability to function more normally, allowing him a recent understanding of the law, and prompting him to challenge his plea of no contest, pursuant to Crim. R. 32.1.
 {¶ 3} The state responded and the trial court ordered the preparation of a transcript from the plea and sentencing hearing. The trial court denied appellant's motion, without a hearing.
 {¶ 4} Appellant timely appealed the trial court's denial of his motion to vacate his plea, and raises the following assignments of error on appeal:
 {¶ 5} First Assignment of Error: "The trial court abused its discretion in denying appellant's motion to withdraw his no contest plea."
 {¶ 6} Second Assignment of Error: "The trial court erred in denying appellant's motion to withdraw his no contest plea without hearing." *Page 3 
 {¶ 7} The following undisputed facts are relevant to the issues raised on appeal. Appellant was indicted on April 11, 2001, for the April 3, 2001, murder of his grandmother. On April 19, 2001, appellant was referred to the Court Diagnostic and Treatment Center ("CDTC") for evaluation pursuant to R.C. 2945.371(G)(3), to determine appellant's competence to stand trial, i.e., whether he was capable of understanding the nature and objective of the proceedings against him or of assisting in his defense. On April 26, 2001, appellant was arraigned and entered a plea of not guilty by reason of insanity. On May 25, 2001, the trial court held a hearing regarding appellant's competency to stand trial. Relying on the May 17, 2001, report from CDTC, the trial court found appellant competent to stand trial. The trial court specifically ordered that, if needed, appellant was to "continue to receive drugs or medication or other appropriate treatment to maintain competence to stand trial."
 {¶ 8} Although appellant did not provide a transcript of the competency hearing and, as such, the report of CDTC was not included in the record on appeal, further details regarding appellant's mental health were given during his plea and sentence. Appellant suffered from a history of mental illness, which was exacerbated by his abuse of illicit drugs, including, cocaine, marijuana, LSD, and alcohol. Additionally, approximately a year before his grandmother's death, appellant was involved in a motorcycle accident and suffered a closed-head injury, for which he spent several months in a nursing home before being released into the community. As alleged by defense counsel, two days prior to his grandmother's death, appellant had voluntarily reported to the emergency room at *Page 4 
Toledo Hospital complaining that he was hearing voices that were telling him to hurt himself and to hurt someone else, and that he feared he might act out. He was kept over night at the Rescue Crisis Center and then released. Appellant told police that, on the day of his grandmother's death, he purchased crack cocaine on several occasions. When he and his grandmother, with whom he lived, got into an argument regarding his lack of income, appellant apparently beat her in the head with an aluminum baseball bat.
 {¶ 9} With respect to appellant's mental illness at the time of the alleged offense, the state noted for the record that, in addition to being found competent to stand trial by CDTC and an independent examiner, appellant "was at least aware enough of the wrongfulness of his actions that he initially gave statements to the police blaming other possible individuals." The state argued that appellant "knew right from wrong and knew what was happening at that point in time."
 {¶ 10} Appellant was also thoroughly questioned by the trial court at his plea hearing in order to determine whether he was knowingly and voluntarily waiving his rights. In addition to advising appellant of each right he would waive as a result of entering a plea of no contest, the trial court questioned appellant regarding his understanding of the charges against him, the representation he received, the possible sentence, and the effect, if any, illicit drugs or prescription medication had on his ability to understand the nature of the proceedings. Appellant responded affirmatively that that he had discussed the facts of the criminal charge against him and that he was satisfied *Page 5 
with the advice of his counsel. In particular, with respect to appellant's mental state during the plea hearing, the following colloquy took place:
 {¶ 11} THE COURT: "Are you either an alcohol or drug dependent individual, Mr. Never?"
 {¶ 12} THE DEFENDANT: "Yes."
 {¶ 13} THE COURT: "What is specifically the problem?"
 {¶ 14} THE DEFENDANT: "I use drugs."
 {¶ 15} THE COURT: "Do you have a problem with drugs?"
 {¶ 16} THE DEFENDANT: "Yes."
 {¶ 17} THE COURT: "Cocaine in particular or are there —"
 {¶ 18} THE DEFENDANT: "Marijuana — marijuana and alcohol, LSD. * * *"
 {¶ 19} THE COURT: "How long have you been in custody, Mr. Never?"
 {¶ 20} THE DEFENDANT: "Approximately three-and-a-half months."
 {¶ 21} THE COURT: "During that time period, have you had occasion to ingest any cocaine, marijuana, LSD, alcohol, or any other illicit substance?"
 {¶ 22} THE DEFENDANT: "Yes, I have."
 {¶ 23} THE COURT: "Since you've been in jail?"
 {¶ 24} THE DEFENDANT: "Yes, I have."
 {¶ 25} THE COURT: "When was that?"
 {¶ 26} THE DEFENDANT: "This was approximately one month ago."
 {¶ 27} THE COURT: "And what was it?" *Page 6 
 {¶ 28} THE DEFENDANT: "Marijuana."
 {¶ 29} THE COURT: "I see. That was the last time?"
 {¶ 30} THE DEFENDANT: "Yes, sir."
 {¶ 31} THE COURT: "A month ago?"
 {¶ 32} THE DEFENDANT: "Yes."
 {¶ 33} THE COURT: "I take it, therefore, Mr. Never, that you are not under the influence of marijuana, alcohol, LSD, cocaine, or any other illicit substance as you are before the Court here this morning; is that correct?"
 {¶ 34} THE DEFENDANT: "I'm taking psychiatric medicine."
 {¶ 35} THE COURT: "Well, I'll get to that in a minute."
 {¶ 36} THE DEFENDANT: "Okay, no."
 {¶ 37} THE COURT: "You're not under the influence of any illicit substance or alcohol at this time?"
 {¶ 38} THE DEFENDANT: "No."
 {¶ 39} THE COURT: "Are you suffering any ill effects here today?"
 {¶ 40} THE DEFENDANT: "No."
 {¶ 41} THE COURT: "Mr. Never, because of any past problems you may have had with marijuana, cocaine, alcohol, LSD, or any other illicit substance, is that having any kind of negative impact this morning upon your ability to think or reason or understand these proceedings?"
 {¶ 42} THE DEFENDANT: "No." *Page 7 
 {¶ 43} THE COURT: "Now, you are taking some prescription medication during this time period; is that right?"
 {¶ 44} THE DEFENDANT: "Yes, I am."
 {¶ 45} THE COURT: "And what substances are you taking?"
 {¶ 46} THE DEFENDANT: "I don't know them all, sir."
 {¶ 47} THE COURT: "How many are there?"
 {¶ 48} THE DEFENDANT: "Two, three."
 {¶ 49} THE COURT: "All right. And you take them on a daily basis?"
 {¶ 50} THE DEFENDANT: "Twice a day."
 {¶ 51} THE COURT: "Okay. When you take them, Mr. Never, either separately or acting in conjunction with other substances, do they have any effect upon your ability to understand what's going on around you?"
 {¶ 52} THE DEFENDANT: "Sometimes they do, yes."
 {¶ 53} THE COURT: "Are they now?"
 {¶ 54} THE DEFENDANT: "No."
 {¶ 55} THE COURT: "They are having no adverse effect on you now?"
 {¶ 56} THE DEFENDANT: "No."
 {¶ 57} THE COURT: "You understand what's going on here today?"
 {¶ 58} THE DEFENDANT: "Yes, I do."
 {¶ 59} THE COURT: "Your mind is clear?"
 {¶ 60} THE DEFENDANT: "Yes." *Page 8 
 {¶ 61} THE COURT: "You don't feel unduly pressured in any way, do you?"
 {¶ 62} THE DEFENDANT: "No."
 {¶ 63} THE COURT: "Do you feel rushed in any way?"
 {¶ 64} THE DEFENDANT: "No."
 {¶ 65} THE COURT: "Do you need more time to speak with Mr. Geudtner?"
 {¶ 66} THE DEFENDANT: "No."
 {¶ 67} In addition to the colloquy on the record, appellant signed a plea form which he reviewed with counsel. The form stated:
 {¶ 68} "I understand the nature of these charges and the possible defenses I might have. I am satisfied with my attorney's advice, counsel and competence. I am not now under the influence of drugs or alcohol. No threats have been made to me. No promises have been made except as to part of this plea agreement ***."
 {¶ 69} Post-sentence motions to withdraw pleas are not freely granted and only should be allowed "to correct manifest injustice." Crim. R. 32.1; State v. Xie (1992), 62 Ohio St.3d 521, 526; and State v.Smith (1977), 49 Ohio St.2d 261, 264. The burden of establishing the existence of a manifest injustice is upon the individual seeking vacation of the plea. Smith, paragraph one of the syllabus.
 {¶ 70} We review the trial court's denial of appellant's motion under an abuse-of-discretion standard, i.e., whether the trial court's attitude was unreasonable, arbitrary, or unconscionable. Xie, at 527, citing State v. Adams (1980), 62 Ohio St.2d 151, 157. The good faith, credibility and weight of the movant's assertions in support of the motion are *Page 9 
matters to be resolved by the trial court. Smith, 49 Ohio St.2d at 264. "[A]n undue delay between the occurrence of the alleged cause for withdrawal and the filing of the motion is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." Id.
 {¶ 71} When a defendant enters a plea in a criminal case, it must be made "knowingly, intelligently, and voluntarily." State v. Engle (1996),74 Ohio St.3d 525, 527. A determination of whether a plea was knowing, intelligent, and voluntary is based upon a review of the record.State v. Spates (1992), 64 Ohio St.3d 269, 272.
 {¶ 72} Six years after entering a plea of no contest, appellant argues that the psychiatric medication he was taking at the time of the plea adversely affected his ability to knowingly and voluntarily waive his rights because they caused him to be confused and irritable. Without providing a timeframe, appellant contends that he became aware of the medication's adverse effect when he stopped taking the medication while incarcerated. After a review of the record, however, we find that appellant's plea was entered knowingly, intelligently, and voluntarily.
 {¶ 73} The trial court conducted a thorough colloquy to ensure appellant was aware of the nature of the charges, the effects of his plea, and the sentence it carried. With respect to his mental competence on the day of his plea, the trial court repeatedly questioned appellant regarding his ability to understand the proceedings and, specifically, whether any medication, prescribed or illicit, was negatively affecting him. Throughout *Page 10 
the colloquy, appellant repeatedly responded that he understood the trial court's explanations and that he was not impaired or unduly pressured.
 {¶ 74} Thus, we find that appellant has failed to establish the existence of a manifest injustice that would warrant granting his post-sentence motion to withdraw his plea of no contest. Appellant's first assignment of error is therefore found not well-taken.
 {¶ 75} Appellant argues in his second assignment of error that the trial court erred in failing to hold an evidentiary hearing regarding his motion. A trial court is required to conduct a hearing on a motion to withdraw a guilty plea that is filed before sentencing. Xie, supra, paragraph one of the syllabus. However, this requirement does not apply to motions filed after sentencing. State v. Whiteman, 11th Dist. No. 2001-P-0096, 2003-Ohio-2229, ¶ 19; and State v. Legree (1988),61 Ohio App.3d 568, 574. Rather, a post-sentence motion to withdraw a guilty plea is subject to denial without a hearing when the record indicates that the defendant is not entitled to relief and he has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice.State v. Carter, 2nd Dist. No. 21694, 2007-Ohio-20, ¶ 24, citing,State v. Miley, 8th Dist. No. 83152, 2004-Ohio-641, ¶ 14.
 {¶ 76} Appellant's colloquy with the trial court during his plea belies the assertions in his motion that he was confused and irritable. Given that appellant delayed six years to raise these alleged issues in a motion weighs against his credibility. Accordingly, we find that the trial court did not abuse it discretion in denying appellant's motion to withdraw his guilty plea without a hearing. There is no support for appellant's motion in *Page 11 
the record. Appellant clearly failed to establish a reasonable likelihood that withdrawal of his plea was necessary to correct a manifest injustice. Appellant's second assignment of error is therefore found not well-taken.
 {¶ 77} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Arlene Singer, J., and Thomas J. Osowik, J., concur. *Page 1